# UNITED STATES v. CERTAIN LANDS IN JO DAVIESS COUNTY, ILL., et al.

## McCLUN v. RYAN et al.

### No. 7306.

Circuit Court of Appeals, Seventh Circuit.

May 22, 1941.

Rehearing Denied June 23, 1941.

James A. Sprowl, of Chicago, Ill., for appellant.

Louis A. Nack, of Galena, Ill., for appellee.

Before EVANS, MAJOR, and TREANOR,* Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court, entered January 5, 1940, awarding respondents certain money deposited with the Clerk of the Court as provided by an interlocutory decree in a condemnation proceeding.

On January 3, 1938, the United States filed a condemnation petition to acquire certain property in Jo Daviess County, Illinois, bordering on the Mississippi River, including a tract of land owned by petitioner. Respondents, who occupied, or had occupied three cottages on the tract, were made defendants, as claiming an interest therein. On March 10, 1939, an order was entered adjudging petitioner to be the owner of the tract, and respondents, the cottages located thereon. The court reserved the right to modify and correct, by a supplemental order, the determination of such rights and interests. On April 4, 1939, a jury determined the compensation to be awarded petitioner for the fee simple title to the tract, and separately fixed an award for each of three cottages. The amount awarded as compensation for the cottages was deposited with the Clerk of the Court, and subsequently the court entered the order appealed from adjudging that said money belonged to respondents.

The issue in the court below, as here, was whether the cottages were a part of the land and the petitioner entitled to the entire award, or whether the cottages were owned by the respondents and they entitled to that portion of the award fixed as compensation therefor.

Petitioner acquired fee simple title to the property from her mother, Anna P. Beadle, who died on September 23, 1929. Respondents, or their predecessors, acquired an interest in the property by lease in 1904. A second lease was executed February 14, 1916, between Anna Beadle, as lessor, and respondents or their predecessors as lessees, which, by its terms, expired January 1, 1918. No formal lease was subsequently executed. Thereafter, however, respond-

---

*Judge TREANOR participated in the hearing of this case, but the opinion has been written since his death.

ents paid in advance, as provided in the 1916 lease, $100 as rent for two-year periods, the last of which expired January 1, 1938. No rent was paid thereafter. On November 11, 1937, petitioner advised respondents that she would be unable to renew the lease at the rate of $100 for two years, but that she was willing to renew the lease at the rate of $100 per year, payable annually. Respondents made no reply to this letter and took no action with reference thereto.

The cottages in question are referred to as Nos. 1, 2 and 3. All the cottages were erected by respondents or by their predecessors. Cottage No. 1 was erected in 1920 to take the place of a cottage which was on the land at the time of the execution of the 1916 lease, but which was subsequently destroyed by fire. Cottages Nos. 2 and 3 were on the land at the time of the execution of the 1916 lease. As shown by photographs included in the record, as well as by stipulation of the parties, all the cottages were fastened to posts driven into the ground. They were utilized by respondents as summer homes and appear to have been of substantial construction. Both the 1904 and 1916 leases contained a surrender covenant which provided that at the expiration of the lease, the premises would be yielded to the lessor "in as good condition as when the same were entered upon by the party of the second part, loss by fire or inevitable accident and ordinary wear excepted." Petitioner has paid all the taxes assessed against the tract of land upon which the cottages were located since 1930, and prior to that time they were paid by her mother. No other taxes were assessed or paid by anyone on account of said tract of land or cottages located thereon.

Respondents seek to sustain the order of the lower court upon the theory that subsequent to January 1, 1918, (the date of the expiration of the 1916 lease) they held the property as tenants from year to year, and that on January 3, 1938, when the condemnation proceeding was instituted, they, as such tenants, were the owners of the cottages and had the right to treat them as movable fixtures, or be compensated for their value when taken. On the other hand, it is petitioner's theory that respondents were not tenants from year to year, but that they were lessees for definite two-year terms, the last of which expired January 1, 1938. It is further contended that the

cottages were not movable fixtures but that even so, respondents had no right of removal after the expiration of the last two-year term.

Originally the lease expired on a certain date and the stipulation of facts expressly states that "the lessees or their assigns continued as lessee by successive renewals at two-year intervals of said lease." There can be no question but that the parties, by correspondence and otherwise, recognized that these successive renewals were for a two-year period and expired at the termination of each period. The last two-year period for which the rent was paid expired January 1, 1938. Under the Illinois authorities respondents were not tenants from year to year. Johnson v. Foreman, 40 Ill.App. 456; Stites v. Wilson, 165 Ill. App. 74; Secor v. Pestana, 37 Ill. 525. As was said in the Johnson case, page 461 of 40 Ill.App.: "If appellant held the last year from Bassett under a verbal agreement to continue for a year at the former rent, then he was not a tenant from year to year, but a tenant whose lease terminated without notice from either party, and by its own limitation. * * *" Thus the leases being for a definite term, it follows that whatever right respondents had with reference to removal was lost by failure to exercise the same prior to the expiration of the lease period. Chap. 80, § 34, Smith-Hurd Statute of Illinois; Radcliff v. Hanger, 239 Ill.App. 292; Miller v. Bennett, 239 Ill.App. 306. In discussing the statutory provision, the court in the Radcliff case, on page 297 of 239 Ill.App., said: "* * * Now the rule as to the right of removal where the controversy arises between landlord and tenant, so far as legislative language can make it clear, is, such fixtures must be removed by the tenant 'during the term of his lease, or of any renewal thereof, or of any successive leasing * * * while he remains in possession in his character as tenant.' It would seem to be clear that the last qualifying clause as to time of removal as between landlord and tenant means, while he remains in possession in his character as tenant under such lease or leases. * * *" Respondents having no right to remove the houses at the time the condemnation suit was instituted, it follows they were not entitled to share in the award. Corrigan v. City of Chicago, 144 Ill. 537, 33 N.E. 746, 21 L.R.A. 212.

564

Moreover, even if respondents occupied the premises as tenants from year to year, they would be entitled to compensation only in the event that the buildings be treated as removable fixtures or personal property. We are of the view that they can not be so considered. We find nothing in the record that discloses such an intent on the part of the parties to the lease. In fact, the provision in the lease that the premises would be surrendered "in as good condition as when the same were entered upon * * *, loss by fire or inevitable accident and ordinary wear excepted" indicates a contrary intention. This, in connection with other circumstances, including the fact that all taxes on the land and improvements were paid by petitioner, that the houses were of permanent type and substantially attached to the land, and that they had remained on the land for twenty to thirty years with no right of removal reserved or asserted, is strongly indicative that the houses became a part of the realty.

The rule appears to be well established in Illinois that improvements of a permanent nature placed upon land, are regarded as forming a part of the land. Dooley v. Crist, 25 Ill. 551, Reprint pages 453, 457; Ogden v. Stock, 34 Ill. 522, 85 Am. Dec. 332; Matzon v. Griffin, 78 Ill. 477; Corrigan v. City of Chicago, 144 Ill. 537, 550, 33 N.E. 746, 21 L.R.A. 212.

For the reasons stated, the cause is reversed and remanded with directions to the District Court to enter an order directing that the award for the cottages be paid to petitioner.